In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00065-CV**
_____

**VANESSA THREET, Appellant**

**V.**

**PATRICIA ELBERT, Appellee**

_____

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-12-17090-CV**

_____

## MEMORANDUM OPINION

Appellant Vanessa Threet ("Vanessa," "Plaintiff," or "Appellant") appeals from the trial court's Final Judgment granting a directed verdict in favor of Appellee Patricia Elbert ("Patricia" or "Appellee"). On appeal, Appellant argues that the trial court erred by excluding certain evidence and by granting Patricia's motion for directed verdict on the defense of limitations. For the reasons explained herein, we affirm.

On January 5th, 2017, Vanessa was involved in a motor vehicle collision between her vehicle and a vehicle driven by Rufus Elbert ("Rufus"). On December 30, 2018, Vanessa filed an Original Petition against Rufus asserting a claim for negligence and seeking a recovery for injuries Vanessa allegedly sustained in the accident. The district clerk's office issued citation for Rufus on January 4, 2019, and the return of service that was filed into the record shows Rufus was served on January 24, 2019. Rufus filed an Original Answer that included a defense (among others) that the Plaintiff's claims are barred by the two year statute of limitations.

On July 13, 2020, defense counsel filed a Suggestion of Death stating that Rufus died on February 29, 2020, that it was not then known whether Rufus had a will or who would be the estate's representative, and stipulating that Rufus caused the accident at issue in the lawsuit. On February 23, 2021, Vanessa filed a First Amended Original Petition naming Patricia Elbert as Rufus's heir and requesting a scire facias. Patricia was served on March 10, 2021, and on April 6, 2021, Patricia filed Defendant's Original Answer and Jury Demand that included a defense (among others) that Plaintiff's claims were barred by limitations.

A pretrial order set the date of trial as November 29, 2021, and it also included dates and express provisions for naming witnesses and experts, as well as

---

[1] We limit our discussion of the facts in the trial court to the issues on appeal.

requirements pertaining to the exchange and filing of exhibits prior to trial. The jury trial began on November 30, 2021.

Evidence at Trial

Just prior to trial, the parties and the trial court discussed the facts related to the limitations defense. The trial court and parties agreed that the lawsuit was filed December 30, 2018; the motor vehicle accident happened on January 5, 2017; and the limitations period ended January 5, 2019. Plaintiff's counsel stated that the defendant's proposed charge included a question about the defense of limitations and that the proposed charge was filed after the court's deadline. The trial court stated that "[t]he Court did its own charge[]" with a question on limitations and that "[l]imitations has been a viable defense in this case for a long time." Plaintiff's counsel stated it had two witnesses, the process server and the Montgomery County clerk, who were prepared to testify on that issue. The trial court stated that it would be an abuse of discretion for the court to allow witnesses to testify who had not been previously disclosed. Plaintiff's counsel also told the court,

> . . . the citation was actually mailed to us. . . . and received on January the 11th at which point we notified the process server of the citation. And we've got e-mails to show the process server didn't see it due to an internal error with the process server until I brought it back to their attention 11 days later. And they picked it up that day and served Rufus Elbert the next day.

The court responded,

3

You know that you filed your lawsuit timely, but the question then for limitations is going to be service. I mean, that -- that's an issue that's been in this case since they filed the answer.

. . .

The question comes down to diligence as a matter of law. That's always the question. Diligence itself is a fact question.

. . .

At this point, there's nothing for me to rule on so -- because you have not called those witnesses yet.

During the Plaintiff's case in chief at trial, Vanessa testified that she was "very involved[]" in serving Rufus. On direct examination, she stated, "I was pretty much calling [my counsel's] office on a daily basis once the -- once we filed the claim. And just -- you know, we just were in constant contact [] about that." She testified that Rufus was served by a process server her counsel had hired. Vanessa recalled talking with Britney Estrada, the process server, "right when she was hired[,]" to give Britney the information she had about Rufus, including his address, his license number, and his date of birth, but Vanessa did not recall talking with Britney again. According to Vanessa it took "13 days from the day we got the papers in the mail[,] [on] January 11th[]" to serve Rufus. Vanessa testified that the papers came from the clerk's office, and Vanessa testified she continued to call her attorney every day "to see if there was anything that [Vanessa] could do[,]" and she also called the clerk's office at one point to see if there was anything else Vanessa could do. Vanessa testified that when her counsel told her they would "handle it," Vanessa made no further phone calls. Vanessa recalled that Rufus was served on January 24, 2019.

4

On cross-examination, Vanessa agreed that it was 13 days from the day the process server got the paperwork before service on Rufus was perfected and that she recalled "calling the office at least four times a week wanting updates because [she] knew it was critical that he got served." A certified copy of the Officer's Return was admitted into evidence, which states it "came to hand" on January 23, 2019, and that service was perfected on January 24, 2019. Vanessa testified that "[i]t was a 13-day delay from the time that [her] attorney's office received" the citation until Rufus was served.

On redirect, Plaintiff's counsel attempted to show Vanessa Exhibits 25, 26, and 27, which were characterized as emails between counsel and the process server, to "refresh Vanessa's memory." The court asked whether Vanessa was included on the emails as a recipient, counsel replied that she was not, and the court instructed counsel to retrieve the documents from Vanessa, and the court would not allow Vanessa to testify about the exhibits. Vanessa testified that she was aware of communications between her counsel and the process server because she was "in constant contact with [her] attorney's office." Vanessa also testified that she attempted to assist her counsel in having Rufus served:

> I gave you guys any kind of information I had, any addresses or, like, even try to Google search for any addresses that -- I mean, I was just trying to do my part. Any, you know, addresses that I might could find. I mean, there was -- the license and things like that. But, you know, I tried to give a little bit of a description of what I remember he looked

5

like, so when he was served they knew the person who they found was the right guy.

The Plaintiff then rested, and the defense moved for a directed verdict on the issue of limitations, stating,

> The evidence in front of the jury is that the process server got the citation on the 23rd day of January, perfected service the very next day. It's a 23-day unexplained delay in due diligence. And Texas courts across the state have held an unexplained delay issue with 18 days is a lack of due diligence as a matter of law.

An extended discussion occurred at the bench, outside the presence of the jury. Citing to *Mauricio v. Castro*, 287 S.W.3d 476, 480 (Tex. App.—Dallas 2009, no pet.), Plaintiff argued that "in cases of relatively short delay, it may take little evidence to prove that, as a matter of fact, the Plaintiff acted as a reasonably prudent person and was diligent in obtaining service." The trial court then stated,

> The length of time that I think I have no evidence on is the delay between January 4th and January 23rd. What evidence do I have related to the diligence that was exercised during that period of time to get -- to get the citation to the process server[?]. . .the burden is on you to explain [] every lapse in effort of period of delay. I have a lapse between January 4th and January 23rd[.]

Plaintiff's counsel responded that Vanessa testified that she stayed in contact with his office, and she was aware of the efforts that were being made to serve Rufus. The following exchange occurred:

> The Court: [Vanessa's] awareness of efforts is different from the jury's awareness of efforts. And they don't have any evidence of what those efforts were. I mean, she says that she Googled it and she looked for addresses and she did all of those kinds of things, but I literally have no

6

evidence that says that this was an address problem or that [Rufus] was dodging service or that we had a failed attempt at one address and then found a better one, nothing like that here.

The evidence I have before me shows a lapse between January 4th and January 23rd. What evidence do I have to explain what was happening during that period of time?

[Plaintiff's counsel]: The Plaintiff's testimony is what we have. . . .

The Court: That she was diligent in terms of checking to see if service had been achieved but it had not been. So what evidence do I have of the diligence to obtain service?

. . .

[Plaintiff's counsel]: The evidence is that our office received the citation on January the 11th of 2019.

. . .

That's the testimony from the Plaintiff.

The Court: She provided that testimony. There is some evidence of that. So let's get you to January 11th. The problem is, what was the delay between the date of filing and you getting it on January 11. I have my explanation for that. Putting that aside for a moment, tell me what happened between January 11th and January 23rd to effect service in terms of the evidence our jurors have heard.

. . .

. . . I have the evidence from the -- from the Plaintiff's testimony that your office received the citation on January 11th. I got 12 days and nobody has accounted for that.

[Plaintiff's counsel]: The Plaintiff has accounted for that by saying she was aware --

The Court: She called. She called frequently. She understood the urgency and she was very insistent on getting updates and making sure that this got done. But she's not serving the papers.

[Plaintiff's counsel]: But she doesn't have to be the one serving the papers.

7

The Court: But there has to be an explanation for what you were doing to get service achieved. You are her agent. What were you doing? And there's no evidence of that. What was the process server doing?

[Plaintiff's counsel]: The case law doesn't say that it has to be just my office or just the process server.

The Court: It does not. That is true. But you have to explain every lapse and every period of delay.
. . .
. . . [T]he Plaintiff wasn't doing anything to achieve service after providing information that she was able to obtain about dates of birth and the address. She did that. And then she was very diligent in calling your office to see if it had been accomplished. But the question is not whether the Plaintiff was very diligent in checking up on whether service had been achieved. The question is were you diligent in getting service?
. . .
. . . I don't know what happened between January 11th when the citation arrived in your office and January 23rd when it was delivered to the process server. That's a 12 day delay. And the burden is to show that there is diligence every step up of the way. I've got 12 days with no explanation of what was happening.
. . .
. . . [T]he return shows that the process [server] didn't have the citation to serve until January 23rd.
. . .
What is the evidence between January 11th and January 23rd?

[Plaintiff's counsel]: Okay. The Plaintiff testified that the process server got his papers on January the 11th. And from that time period up until the time the Defendant was served, that she was aware of the -- of the attempts that were being made. That's what she said. That's technically some evidence. . . .
. . .
[Defense counsel]: . . .[S]he did not testify that the process server received it on a specific date. What she did testify, and if I'm wrong, we can go back and check the record, but I believe my recollection was that she said that the attorney's office got it on the 11th. I objected. You sustained the objection and instructed the jury to disregard[.] . . .[T]he

8

Plaintiff never said that that's when the process server got it. And the only evidence before the jury right now completely contradicts it and says that process server received it on the 23rd and perfected service at the same address that's listed in the petition the very next day, the very next morning. So I respectfully disagree that there were any service attempts because there is no evidence of that.

. . .
The Court: . . . You got the citation January the 11th. Maybe the process server got the citations January 11th. That's the way you recall it, but at this moment it [] doesn't matter with my question because once the -- once the citation landed in somebody's hands on January 11th, it doesn't go anywhere until January 24th.
. . .
I need some affirmative evidence to explain to the jury what happened between January 11th and January 23rd if they believe Defendant's Exhibit 3; January 24th, if they do not because your client testified on the date of service so that evidence is there.
. . .
[Plaintiff's counsel]: [W]e can refer back to the e-mails that were Exhibits Number 25 and 26 and 27 that were offered, obviously, pretrial that you know they were object[ed][] to by the Defendant.

The Court: They were not admitted. They're not part of the evidence the jury has received or will receive.

[Plaintiff's counsel]: And I would just ask the Court to reconsider the ruling under that -- under the optional completeness statute.

The Court: You literally never offered them.
. . .
. . . I have not made a ruling on it because you never offered it and I never received an objection because you never offered it and I never ruled because I didn't have an objection to rule upon or an offer of evidence to rule upon.
. . .
. . . Finding no evidence to explain the delay between January 11th and January 23rd related to the service issue and noting that the evidence is conclusive that the cause of action accrued on January 5th of 2017 to your limitations period as a matter of law, that takes [] us to January 5th

9

of 2019. The lawsuit was timely filed. Service was not achieved until January 24th, also conclusive. The only open question is what diligence was exercised between January 11th and January 23rd. And I am finding that there is no evidence to explain those delays in service. The motion for directed verdict is granted.

When the jury returned, the trial court told the jury that the case had been resolved and then excused the jury. The trial court signed a Final Judgment on December 3, 2021, granting Patricia's motion for directed verdict and ordering that Vanessa take nothing.

Plaintiff's Post-Trial Filing

Vanessa filed a Motion for New Trial [and] Alternatively Motion for Reconsideration of Directed Verdict. Therein, Vanessa argued that she had offered proposed Exhibits 25, 26, and 27 into evidence at trial and the trial court excluded the exhibits.[2] The motion characterized the proposed exhibits as "three emails between the process server who signed the Service Return, and Plaintiff's counsel," which Plaintiff's counsel argued specifically addressed a several-day gap in service that the process server attributed to an internal computer server issue, and counsel argued it provided full context of the January 11 through January 24, 2019 timeframe.

---

[2] The proposed email exhibits were not listed in Plaintiff's Trial Exhibit List filed before trial on November 15, 2021, but they were listed in Plaintiff's First Amended Trial Exhibit List filed November 29, 2021, the day of trial.

The emails were attached to the Motion for New Trial. Proposed Exhibit 25 appears to be an email from Plaintiff's counsel to Britney Estrada, the process server, dated January 11, 2019 and states: "We have a citation ready for pick up." Proposed Exhibit 26 appears to be an email from Plaintiff's counsel to Britney Estrada dated January 22, 2019, and it states: "Could y'all please shoot us an update for this case? SOL was 1/5/19." Proposed Exhibit 27 appears to be an email from Britney Estrada to Plaintiff's counsel dated January 23, 2019, and it states: "I am so sorry, our old email server has been spamming a lot of our emails, and this one must have been missed. We have fixed our server, and this will be picked up and attempted today!"

According to the motion, although the emails were offered under Rules 106 and 107 ("The Rule of Optional Completeness"), the trial court "believed the emails were a 'separate document[]'" and "disagreed that the emails had ever been offered and refused to reconsider its ruling as to Plaintiff's offer under those Rules." The Plaintiff argued in the motion that the excluded documents would have given "context and explanation for any perceived lack of diligence in serving Rufus Elbert." Plaintiff also argued that Patricia had not timely filed her pretrial documents according to the court's pretrial order, and that when Patricia did file her pretrial documents, she did not include nor reference the service return as an exhibit. The plaintiff argued in the motion, that because Rule 107 allows admission of "any other act, declaration, conversation, writing, or recorded statement that is necessary to

11

explain or allow the trier of fact to fully understand the part offered by the opponent[,]" the trial court erred by excluding the emails on the basis that they were from "'another' or [a] 'separate' document[.]"

The Plaintiff also argued in the motion that a fact issue precluding a directed verdict existed because Vanessa testified about her diligence including the date the process server received the citation whereas the service return stated a different date. Plaintiff asserted that if the trial court had admitted the process server's emails, "a full explanation as to the 19-day gap in service would have been bridged[.]" Plaintiff also argued that 6 of the 19 days "were taken up by the Clerk's office mailing the citation," and the remaining 13 days were explained by Vanessa.

Patricia filed a response to Plaintiff's motion. Patricia argued that Plaintiff may not create a fact issue on diligence by claiming that the district clerk was late in mailing the citation and that the process server had a computer server issue because it is the plaintiff's responsibility to timely effect service. Patricia also argued that the trial court did not abuse its discretion in excluding the email exhibits. According to Patricia, Rules 106 and 107 do not apply because the email exhibits "were not an 'other part' of the return of service[,]" and the return of service speaks for itself.[3]

---

[3] Citing *SJ Logistics Grp. v. Colossal Transp. Sols., LLC*, No. 01-17-00324-CV, 2018 Tex. App. LEXIS 1769, at *6 (Tex. App.—Houston [1st Dist.] Mar. 8, 2018, no pet.) (mem. op.); *Garza v. Watkins, P.C.*, No. 04-07-00848-CV, 2009 Tex. App. LEXIS 1588, at *5 (Tex. App.—San Antonio Mar. 4, 2009, no pet.) (mem. op.)

Patricia argued that the emails Plaintiff references "show that only one inquiry about the status of service was made to the process server—on January 22, 2019[,]" and that "[b]y that date, limitations had run 17 days" earlier, and therefore, the delay in service was not explained. Patricia also argued that Vanessa's testimony about staying in contact with her attorneys was no evidence of diligence because it was not based on personal, firsthand knowledge of efforts to serve Rufus. Patricia further argued that the trial court did not err by not allowing Vanessa to "refresh her recollection" by looking at the emails because she had not sent nor received them and did not have personal knowledge of the emails.

The trial court denied Plaintiff's Motion for New Trial on January 28, 2022. This appeal followed.

Issues

Appellant raises two issues on appeal. In issue one, Appellant argues that the trial court erred in granting a directed verdict on Appellee's defense of limitations because fact issues existed on Appellant's diligence. In issue two, Appellant argues that the trial court erred in denying admission of three of her exhibits that would "explain a 12-day gap the trial court claimed needed additional evidence of diligence."

---

(citing *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152 (Tex. 1994) (per curiam)).

Standard of Review

"We review a trial court's grant of directed verdict de novo, using the legal sufficiency standard appellate courts apply to no-evidence summary judgments." *City of Baytown v. Schrock*, 645 S.W.3d 174, 178 (Tex. 2022) (citing *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018); *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). "A trial court properly grants a directed verdict when no evidence supports a vital fact or the evidence fails to state a claim as a matter of law." *Id.* (citing *City of Keller*, 645 S.W.3d at 810-11, 814-16). "We consider the evidence in a light favorable to the party suffering an adverse judgment, crediting all reasonable inferences and disregarding evidence and inferences to the contrary." *Id.* (citing *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215, 217 (Tex. 2011)).

We review a trial court's ruling on the admission of evidence under an abuse of discretion standard of review. *See Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We will uphold the trial court's decision if it is within the zone of reasonable disagreement. *Diamond Offshore Servs., Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018). We consider a trial court's ruling in light of what was before

14

the court when the ruling was made. *See Stephens Cty. v. J.N. McCammon, Inc.*, 52 S.W.2d 53, 55 (Tex. 1932) ("When an appellate court is called upon to revise the ruling of a trial court it must do so upon the record before that court when such ruling was made."); *Congleton v. Shoemaker*, Nos. 09-11-00453-CV & 09-11-00654-CV, 2012 Tex. App. LEXIS 2880, at **15-16 n.3 (Tex. App.—Beaumont Apr. 12, 2012, pet. denied) (mem. op.) ("Our review . . . is limited to the record before the trial court at the time of its ruling.").

Statute of Limitations

"A suit for personal injuries must be brought within two years from the time the cause of action accrues." *See Proulx v. Wells*, 235 S.W.3d 213, 215 (Tex. 2007) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a)); *see also Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 592 (Tex. 2017). "A cause of action for negligence accrues on the date when the negligent act that produces the injury is committed." *Sykes v. White*, No. 09-20-00227-CV, 2021 Tex. App. LEXIS 6638, at **13-14 (Tex. App.—Beaumont Aug. 12, 2021, no pet.) (mem. op.) (citing *Dunmore v. Chicago Title Ins. Co.*, 400 S.W.3d 635, 641 (Tex. App.—Dallas 2013, no pet.)). "To 'bring suit' within the two-year limitations period prescribed by section 16.003, a plaintiff must not only file suit within the applicable limitations period, but must also use diligence to have the defendant served with process." *See Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) (citing *Rigo Mfg. Co. v. Thomas*, 458 S.W.2d 180, 182

(Tex. 1970); *see also Proulx*, 235 S.W.3d at 215. If the petition is filed within the applicable limitations period, service outside the limitations period may still be valid if the plaintiff exercises due diligence in procuring service on the defendant. *Ashley v. Hawkins*, 293 S.W.3d 175, 179 (Tex. 2009). "If service is diligently effected after limitations has expired, the date of service will relate back to the date of filing." *Proulx*, 235 S.W.3d at 215 (citing *Gant*, 786 S.W.2d at 260).

Once a defendant has pleaded the affirmative defense of limitations and has demonstrated that service occurred after the limitations deadline, the burden shifts to the plaintiff to explain the delay. *See Ashley*, 293 S.W.3d at 179; *Proulx*, 235 S.W.3d at 216. "[I]t is the plaintiff's burden to present evidence regarding the efforts that were made to serve the defendant, and to explain every lapse in effort or period of delay." *Proulx*, 235 S.W.3d at 216.

The inquiry is two-pronged: (1) whether the plaintiff acted as an ordinarily prudent person would have acted under the same or similar circumstances, and (2) whether the plaintiff acted diligently up until the time the defendant was served. *See Ashley*, 293 S.W.3d at 179; *Proulx*, 235 S.W.3d at 216. "A plaintiff's explanation of the efforts in obtaining service may demonstrate a lack of diligence 'as a matter of law' when 'one or more lapses between service efforts are unexplained or patently unreasonable.'" *Allen v. Dies*, No. 09-10-00157-CV, 2011

16

Tex. App. LEXIS 4507, at \*4 (Tex. App.—Beaumont June 16, 2011, pet. denied) (mem. op.) (quoting *Proulx*, 235 S.W.3d at 216).[4]

It is the plaintiff who is responsible for ensuring that service is properly accomplished and not the process server nor district clerk. *See* Tex. R. Civ. P. 99(a); *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 152-53 (Tex. 1994); *Allen*, 2011 Tex. App. LEXIS 4507, at \*\*5-7. Any delay or deficiency by the process server is imputed to the plaintiff as a matter of law. *See Flanigan v. Nekkalapu*, 613 S.W.3d 361, 365 (Tex. App.—Fort Worth 2020, no pet.) (citing *Roberts v. Padre Island Brewing Co., Inc.*, 28 S.W.3d 618, 621 (Tex. App.—Corpus Christi–Edinburg 2000 pet. denied)); *Allen*, 2011 Tex. App. LEXIS 4507, at \*6. "[I]f the plaintiff's explanation for the delay raises a material fact issue concerning the diligence of

---

[4] *See also Smith v. Ramos*, No. 09-21-00153-CV, 2023 Tex. App. LEXIS 1571, at \*8 (Tex. App.—Beaumont Mar. 9, 2023, no pet. h.) (mem. op.) ("When the record reveals a period of time when the plaintiffs made no efforts to serve the defendant, and that lack of effort is unexplained, there is a lack of due diligence as a matter of law.") (citing *Cumpian v. Ventura*, No. 09-16-00277-CV, 2018 Tex. App. LEXIS 922, at \*\*6-7 (Tex. App.—Beaumont Feb. 1, 2018 no pet.) (mem. op.)); *Jenkins v. Taylor*, No. 14-21-00175-CV, 2022 Tex. App. LEXIS 3098, at \*5 (Tex. App.—Houston [14th Dist.] May 10, 2022, no pet.) (mem. op.) ("[I]f one or more lapses between service efforts are unexplained or patently unreasonable, then the plaintiff has failed to show diligence as a matter of law[.]") (citing *Proulx v. Wells*, 235 S.W.3d 213, 216 (Tex. 2007)); *Michel v. Foodmaker, Inc.*, No. 09-97-101-CV, 1997 Tex. App. LEXIS 5800, at \*4 (Tex. App.—Beaumont Nov. 6, 1997, no pet.) (mem. op.) (explaining that diligence in effecting service is normally a question of fact, but if no excuse is offered for a delay or if the lapse of time and the plaintiff's acts conclusively negate diligence, a lack of diligence may be found as a matter of law) (citing *Perry v. Kroger Stores, Store No. 119*, 741 S.W.2d 533, 534 (Tex. App.—Dallas 1987, no writ)).

17

service efforts, the burden shifts back to the defendant to conclusively show why, as a matter of law, the explanation is insufficient." *Proulx*, 235 S.W.3d at 216 (citing *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975)). "[T]he measure of diligence begins from the time the suit is filed and an explanation is needed for every period of delay." *Sharp v. Kroger Tex. L.P.*, 500 S.W.3d 117, 120 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Proulx*, 235 S.W.3d at 216; *Gant*, 786 S.W.2d at 260).

Even if the delay is relatively short, the plaintiff must present some evidence of diligence in obtaining service. *See Budget Rent A Car Sys., LLC v. Valadez*, 558 S.W.3d 304, 308 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Mauricio*, 287 S.W.3d at 480).[5] "[A] negligible delay in service does not necessarily translate to a showing of diligence as a matter of law in cases involving service beyond the statute of limitations." *Rojas v. Citimortgage, Inc.*, No. 13-16-00257-CV, 2017 Tex.

---

[5] *See also Rojas v. Citimortgage, Inc.*, No. 13-16-00257-CV, 2017 Tex. App. LEXIS 8729, at **11-13 (Tex. App.—Corpus Christi–Edinburg Sept. 14, 2017, no pet.) (mem. op.) (holding that the plaintiff failed to carry its burden as a matter of law where it failed to explain the thirty-six-day delay between filing suit and obtaining service, even though service was completed eight days after the passing of limitations); *Rodriguez v. Tinsman & Houser, Inc.*, 13 S.W.3d 47, 51 (Tex. App.—San Antonio 1999, pet. denied) (holding that the plaintiff failed to raise a fact issue on diligence because the proffered excuse for the twenty-five-day delay between the expiration of limitations and service was not valid); *Perkins v. Groff*, 936 S.W.2d 661, 668 (Tex. App.—Dallas 1996, writ denied) (holding that suit was barred by limitations where the plaintiff provided no explanation for the eighteen-day delay between the expiration of limitations and service on the defendant).

App. LEXIS 8729, at \*11 (Tex. App.—Corpus Christi–Edinburg Sept. 14, 2017, no pet.) (mem. op.). Rather, "[i]n cases of relatively short delay. . . it may take little evidence to prove that, as a matter of fact, the plaintiff acted as a reasonably prudent person and was diligent in obtaining service; however, it does take *some* evidence." *Mauricio*, 287 S.W.3d at 480. In *Mauricio*, the trial court granted a directed verdict where there was no evidence to explain a lapse of thirty-one days from the time the statute of limitations expired to the time the defendant was served with the citation and petition. *See id.*

### Admission of Evidence

We address Appellant's second issue first, which challenges the trial court's exclusion of Proposed Exhibits 25, 26, and 27 (hereinafter, "the emails" or "the email exhibits"). Appellee argues that Appellant failed to preserve error because she failed to make an offer of proof. The trial court stated that the Plaintiff had never offered the emails for the court to make a ruling. Because Plaintiff failed to make an offer of proof, she has failed to preserve error on this issue. *See Gunn v. McCoy*, 554 S.W.3d 645, 666 (Tex. 2018) ("If a court ruling excludes evidence, a party must preserve error by filing an offer of proof informing the court of the substance of the excluded evidence. Tex. R. Evid. 103.").[6]

---

[6] Appellee also argues that Appellant waived this issue by failing to support her argument with citations to the record as required by Texas Rule of Appellate Procedure 38.1.

19

Even if Appellant had preserved error, we also conclude that the trial court did not err in excluding the email exhibits. Appellant argued at trial that the exhibits should be admitted under the "Rule of Optional Completeness." Texas Rule of Evidence 106 states that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may introduce, at that time, any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Tex. R. Evid. 106. And Rule 107, the "Rule of Optional Completeness," states that "[i]f a party introduces part of an act, declaration, conversation, writing, or recorded statement, an adverse party may inquire into any other part on the same subject. An adverse party may also introduce any other act, declaration, conversation, writing, or recorded statement that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent." Tex. R. Evid. 107.

During cross-examination of Vanessa, the defense offered Exhibit 3, which was a certified copy of the process server's return. Plaintiff's counsel objected that the document was hearsay and unauthenticated and stated, "under the doctrine of optional completeness in Rule 106 and 107, we ask that if that document be admitted that the documents -- in other words, the e-mails with the process server also be admitted so that the jury can see the whole picture and the full story." The court ruled that "[t]he objection as to optional completeness is overruled because we're dealing with separate documents."

20

Later during the trial, Plaintiff sought to introduce the emails with Vanessa in an attempt "to see if [they] refreshe[d] [her] memory" of the January 2019 time period. Under Texas Rule of Evidence 612, when a witness does not immediately recollect certain facts in a case, the witness may refresh her memory by reviewing a writing made when her memory was fresh, and after reviewing the writing, the witness must testify either her memory is refreshed or that it is not. *See* Tex. R. Evid. 612. The appellate record gives no indication that Vanessa was unable to recollect the events outlined in the email exchange between her attorney and the process server, nor did her attorney explain how the emails would help her refresh her memory of January 2019. The trial court explained on the record that Rule 612 did not apply, and Vanessa was not an author or recipient of the emails.

Appellant also argues in her brief that the trial court erred by excluding the emails and that "whether the process server emails were from 'another' or 'separate' document" is not a basis for exclusion when "in fairness [they] ought to be considered" and are "necessary to explain or allow the trier of fact to fully understand the part offered by the opponent." *See* Tex. R. Evid. 106, 107. Appellant further argues that the emails "would [] have explained the diligence issue of serving Rufus Elbert." As noted above, during the trial it was the Plaintiff who objected to the admission of the return of service, and after the defense moved for a directed

verdict on limitations, Plaintiff wanted to introduce the emails through the Plaintiff to explain to the jury what happened between January 11th and January 23rd or 24th.

On this record, we conclude the trial court's exclusion of Plaintiff's Exhibits 25, 26, and 27 was within the zone of reasonable disagreement and it was not an abuse of discretion. *See Diamond Offshore Servs., Ltd.*, 542 S.W.3d at 545; *Gharda USA, Inc.*, 464 S.W.3d at 347; *Downer*, 701 S.W.2d at 241-42. We overrule Appellant's second issue.

## Directed Verdict

The parties do not dispute that the motor vehicle collision occurred on January 5, 2017, that Rufus was served on January 24, 2019, and that the statute of limitations expired on January 5, 2019. Appellant acknowledges that

> [t]he case at hand has a 19-day gap from the expiration of the limitations period to when Rufus Elbert was served, at least 6 days of which were explained/taken up by the Clerk's office mailing the citation, which left at most just 13 days, which was acknowledged by the trial court.

Appellant alleges that Vanessa testified that the citation arrived at her attorney's office on January 11, 2019 "and was emailed to a process server the same day[,]" but the brief does not provide record references for this assertion. *See* Tex. R. App. P. 38.1(i). According to the Appellant, what happened between January 11, 2019 and January 23, 2019 has two explanations: Vanessa's testimony, and the process server's email indicating an internal computer server issue (Proposed Exhibit 27 which was never offered into evidence). Vanessa testified that she was "pretty much

22

calling [her attorney's] office on a daily basis" after the petition was filed, and she stopped calling after her attorney's office told her they were "handling it[.]"

Appellant argues that a fact issue exists as to the date when the process server received the citation because Vanessa testified that the process server received the citation on January 11, 2019 and the return of service indicates the process server received the citation on January 23, 2019. The trial court stated that Vanessa testified that her attorney's office received the citation on January 11th and that is not necessarily the date when the process server received it. Plaintiff argued that a fact issue existed because the jury could choose to believe the citation, which stated that the process server received the citation on January 23, or "they can choose to listen to what the Plaintiff's testimony said."

Vanessa testified that it took "13 days from the day we got the papers in the mail[]" on January 11, 2019 for the process server to serve Rufus, and "we got the document in the mail from the clerk's office on January 11th." Even assuming that Vanessa may have called her attorney and obtained information about efforts at service, the trial court concluded there is "no affirmative evidence [] that explains what happened to that citation and getting it into Mr. Rufus Elbert's hands between January 11th and January 23rd."

Appellant complains that the trial court did not allow admission of the email exhibits which would have explained the relevant time period. However, even if the

23

emails had been admitted, the emails are dated January 11 and January 23, and they do not explain the gap between these two dates. We cannot say the trial court erred in making her rulings, nor would the emails provide affirmative evidence that explained what happened to the citation and the delay in service of Rufus between January 4 to January 11, and then January 11 to January 23 of 2019.

Appellant had the burden to explain the delay in service and failed to do so by presenting evidence explaining the delays of service during the trial. So, we cannot say the trial court erred. The trial court correctly noted the Plaintiff failed to meet her burden and pointed out the unexplained periods of delay demonstrated a lack of diligence as a matter of law. Therefore, a directed verdict was proper. *See Allen*, 2011 Tex. App. LEXIS 4507, at *4 (citing *Proulx*, 235 S.W.3d at 216); *Mauricio*, 287 S.W.3d at 480. We overrule Appellant's first issue.

Having overruled both of Appellant's issues, we affirm the trial court's judgment.

AFFIRMED.

_____<br>
LEANNE JOHNSON<br>
Justice

Submitted on March 16, 2023
Opinion Delivered April 27, 2023

Before Golemon, C.J., Johnson and Wright, JJ.